UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, CDCR #AH-1995,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>DR. GULDSETH; CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES; C.D.C.R; S. ROBERTS (CME),<br><br>　　　　　　　　　　　　Defendants. | Case No.: 20-CV-1633 TWR (RBM)<br><br>**ORDER (1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*, AND (2) DISMISSING CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**<br><br>(ECF No. 2) |

　　　　Plaintiff Raul Arellano, currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. Section 1983. (*See* ECF No. 1 ("Compl.").) Plaintiff asserts claims under the First Amendment, Eighth Amendment, and California state law against two individuals, his primary care doctor and the chief medical executive, and two state entities, California Correctional Health Care Services ("CCHCS") and the California Department of Corrections and Rehabilitation ("CDCR"). (*See generally id.*)

　　　　Plaintiff did not prepay the $400 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. Section 1915(a). (*See* ECF No. 2 ("Mot.").)

# MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). A prisoner who is granted leave to proceed IFP remains obligated, however, to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. ___, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. §§ 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1), (4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

///

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Oct. 1, 2019)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. Section 1915(a)(2) and Civil Local Rule 3.2. *Andrews*, 398 F.3d at 1119.  The Court has reviewed Plaintiff's trust account activity, as well as the attached prison certificate verifying his available balances.  (*See* ECF No. 3 at 1–4.)  These documents show that Plaintiff carried an average monthly balance of $0.00, had average monthly deposits to his trust account of $0.00 for the six months preceding the filing of this action, and had an available balance of just $0.05 at the time of filing.  (*See id.* at 1.)

The Court therefore **GRANTS** Plaintiff's Motion (ECF No. 2) and **DECLINES** to impose the initial partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it."  *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. Section 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").  Instead, the Court **DIRECTS** the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. Section 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

**SCREENING PURSUANT TO 28 U.S.C. SECTIONS 1915(e)(2) AND 1915A(b)**

**I.    Standard of Review**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b).  Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th

Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## II. Plaintiff's Factual Allegations

Plaintiff alleges that he experiences "partial & tonic seizures" and pain from nerve damage as a result of injuries he sustained in an excessive force incident that occurred in 2007 or 2010. (*See* Compl. at 3 ("The [e]xcessive force occur[r]ed in Nov [sic] 2007, 2010.").) In December 2018, Defendant Guldseth became Plaintiff's primary care doctor. (*See id.*) Plaintiff recounted for Dr. Guldseth the details of the excessive force incident and his injuries; subsequent injuries he suffered as a result of seizures, diabetes, chronic pain,

and a suicide attempt; the medical treatment he received; and various issues with obtaining medication either from prison staff or medical personnel. (*See id.* at 3–4.)

One medication, Gabapentin, is central to Plaintiff's claims against Dr. Guldseth. In 2016, another doctor prescribed Gabapentin and another medication, Depakote, to address Plaintiff's seizures, nerve damage, and diabetic neuropathy. (*See id.* at 4.) Plaintiff told Dr. Guldseth that this was "the only course of treatment effective to [his] serious medical conditions without severe side effects." (*See id.* at 4.) Plaintiff's previous doctor authorized increased doses of Gabapentin over time because Plaintiff's "body got use[d] to [the medication]." (*See id.*) Accordingly, although Plaintiff started with a daily dose of 600 mg of Gabapentin in 2016, by the time Dr. Guldseth became Plaintiff's primary care doctor he was taking 2000 mg per day. (*See id.*) With these increased doses, Plaintiff told Dr. Guldseth that his pain was adequately managed but that "when pain is not control[led] . . . it [doesn't] let [him] sleep [and] it triggers seizures." (*Id.*) According to Plaintiff, both he and Dr. Guldseth agreed that the maximum potential daily dose of Gabapentin is 3600 mg. (*See id.*)

Despite that information, Dr. Guldseth apparently refused to prescribe more than 2000 mg of Gabapentin to Plaintiff for approximately six months. (*See id.* at 5.) Dr. Guldseth "knew that [this dosage] wasn't controlling [Plaintiff's] pain," preventing Plaintiff from sleeping, walking, and exercising, and increasing the frequency of Plaintiff's seizures, which in turn increased the likelihood that Plaintiff would fall and be injured. (*See id.*) When Plaintiff sought increased doses of Gabapentin, Dr. Guldseth allegedly "punish[ed] [Plaintiff] by using needle poking for testing . . . only for the conclusion of [the] test to reveal [Plaintiff] was taking [his] Gabapentin and no illicit drugs." (*Id.*) According to Plaintiff, this violates the Bane Act, California Civil Code Section 52.1, which also allows him to hold the CDCR liable for Dr. Guldseth's actions. (*See id.* at 8.)

Dr. Guldseth also told Plaintiff that the reason he was not increasing his dosage was because Plaintiff filed too many medical forms and that it was more important "for his higher personnel to see he's not prescribing Gabapentin" than to address Plaintiff's pain.

(*See id.* at 5.)  Plaintiff alleges that this was retaliation for Plaintiff's exercise of his First Amendment rights by filing medical forms.  (*See id.* at 8.)  Additionally, Plaintiff notes that he sought an alternative treatment but that Dr. Guldseth acknowledged that "Lyrica & Gabapentin are almost [the] only type [of treatment] that reduce pain cause[d] by nerve damage."  (*Id.* at 5.)  Eventually, Plaintiff's prescription was discontinued when he refused a drug test that he alleges did not follow prison procedures.  (*See id.*)

Plaintiff alleges that this sequence of events constituted deliberate indifference in violation of his Eighth Amendment rights.  (*See id.* at 6.)  Additionally, Plaintiff alleges that Dr. Guldseth continued to prescribe high doses of Depakote to Plaintiff, even without Gabapentin, despite knowing "that Depakote over 500 mg was intolerable due to suicidal thoughts and stomach pain[ and] drowsiness leading to falls" and that "Depakote at 250 mg or without Gabapentin was ineffective [for] seizures."  (*See id.* at 7.)  According to Dr. Guldseth, this justified "his actions [o]n paper because it reveals he has [Plaintiff o]n seizure medication although he knew it was in[]effective."  (*See id.*)  The same was true of Plaintiff's prescription for a third medication, Cymbalta, which Plaintiff told Dr. Guldseth had severe side effects and "put [his] health & life at risk."  (*Id.*)  Dr. Guldseth ignored this information, instead increasing Plaintiff's dose.  (*See id.*)

In addition to his Bane Act claim, Plaintiff contends that CCHCS is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for condoning Dr. Guldseth's denials of Plaintiff's right to medical care.  (*See id.* at 8.)  Plaintiff alleges that more than 20 administrative grievances have been denied despite Dr. Guldseth's insistence on an ineffective course of treatment.  (*See id.* at 8–9.)  According to Plaintiff, it is "obvious that Headquarters condone[s] this type of [behavior] by its doctors."  (*Id.* at 9.)  Additionally, Plaintiff alleges that CDCR and CCHCS are liable under California Government Code Sections 844.6 and 845.6 for failing to provide care for Plaintiff's serious medical conditions.  (*See id.* at 9-10.)

Plaintiff's remaining claims are leveled against Defendant Chief Medical Executive S. Roberts.  (*See id.* at 11.)  Plaintiff alleges that he provided information to Defendant

Roberts about his course of treatment with Dr. Guldseth and, based on that information, Roberts "should have recognize[d] that the deprivation of [Gabapentin] w[ould] trigger severe pain and uncontrol[led] seizure[s]" leading to further health complications for Plaintiff. (*Id.*)  Although the sequence of events is somewhat unclear, Plaintiff evidently wrote to Roberts asking him to intervene in Plaintiff's treatment by Dr. Guldseth. (*See id.*) Roberts then wrote back, "saying he w[ould not] intervene and for [Plaintiff] to file [a] grievance." (*Id.*)  Plaintiff alleges that he submitted a grievance on December 23, 2019, which still has not been addressed by Roberts.[2] (*See id.*)  In Plaintiff's view, this failure to intervene constitutes deliberate indifference and medical malpractice in violation of California Government Code Section 845.6. (*Id.* at 12.)  Plaintiff also seeks to hold the CDCR liable pursuant to Section 845.6 "due to its employee['s] fail[ure] to get medical care." (*See id.*)  Plaintiff alleges that, as a result of Roberts' inaction, he has suffered many falls due to neuropathy and seizures and that he is experiencing severe pain that prevents him from sleeping, walking, eating, or exercising. (*See id.*)

On October 13, 2020, Chief Judge Larry Alan Burns, to whom this case was previously assigned, issued an order finding that this case is related to *Arellano v. Jones*, No. 20-CV-228 (S.D. Cal.) pursuant to Civil Local Rule 40.1(g). (*See* ECF No. 5 at 2.) Subsequently, both this case and *Jones* were reassigned to the undersigned for all further proceedings. (*See* ECF No. 6 at 2.)

**III.  Analysis**

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the

///

---

[2] Although it is not necessarily clear from the face of the Complaint, the Court notes that, if Plaintiff's grievance had not been addressed at the time Plaintiff filed his Complaint, Plaintiff's claims may be subject to an affirmative defense for failure to exhaust administrative remedies prior to filing his case. *See Jones v. Bock*, 549 U.S. 199, 212 (2007) (describing the affirmative defense of failure to exhaust).

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

The Court finds that, with respect to his Eighth Amendment claims against Dr. Guldseth, Plaintiff's Complaint contains plausible allegations sufficient to surpass the "low threshold" set for *sua sponte* screening required by 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1123; *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment."); *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) ("Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988))); *Hardy v. Three Unknown Agents*, 690 F. Supp. 2d 1074, 1092 (C.D. Cal. 2010) (noting that a plaintiff may state a claim for deliberate indifference when, among other things, he alleges that a medical decision "was taken not in the exercise of medical judgment, but for non-medical reasons" (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996))).

The same is true of Plaintiff's Bane Act and First Amendment retaliation claims against Dr. Guldseth, which allege, among other things, that Dr. Guldseth ordered excessive and retaliatory drug testing in response to Plaintiff's requests for increased doses of Gabapentin and refused to prescribe those increased doses for non-medical reasons, including Dr. Guldseth's view that Plaintiff had filed too many medical forms. (*See* Compl. at 5.) These claims also survive screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Applegate v. Nkwocha*, No. 1:16-cv-00490-MJS (PC), 2016 WL 4126711, at *6–7 (E.D. Cal. Aug. 3, 2016) (allegations of interference with the ability to file grievances and right to medical care by threat of physical violence were sufficient to state Bane Act and First Amendment retaliation claims); *Miller v. Cal. Dep't of Corrs.*, No. 3:16-cv-2431-EMC, 2016 WL 3418522, at *3–4 (N.D. Cal. June 22, 2016) (concluding that pro se prisoner stated First Amendment retaliation and Bane Act claims against

medical personnel who allegedly denied proper medical care and threatened to continue doing so in response to plaintiff's complaints and grievances).

Plaintiff's claim against Dr. Guldseth for medical malpractice pursuant to California Government Code Section 845.6, however, must be dismissed.  As California courts have explained, Section 845.6 is "very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, *not for certain employee's malpractice in providing that care*."  *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013) (emphasis added); *see also Nelson v. California*, 139 Cal. App. 3d 72, 81 (1982) ("[F]ailure of a practitioner to prescribe or provide necessary medication or treatment . . . is . . . medical malpractice and clearly, as a matter of the plain meaning of the statutory language, *cannot be characterized as a failure to summon medical care*." (emphasis added)).  Accordingly, Plaintiff's Section 845.6 claim against Defendant Guldseth is dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. Sections 1915(e)(2)(B) and 1915A(b).  *See Wilhelm*, 680 F.3d at 1121; *Lopez*, 203 F.3d at 1126–27.

Plaintiff's claims against the CDCR and CCHCS also must be dismissed.  Plaintiff's *Monell* claim against CCHCS fails because the Eleventh Amendment bars the application of *Monell* against a state or state entity.  *See Monell*, 436 U.S. at 690–91 ("Our holding today is, of course, limited to local government units[,] which are not considered part of the State for Eleventh Amendment purposes."); *Rua v. Cal. Corr. Health Care Servs.*, No. 2:19-cv-6115-CJC-KES, 2019 WL 3741024, at *2 (C.D. Cal. Aug. 8, 2019) ("As an agency of the State, the CDCR is entitled to Eleventh Amendment immunity, and so is CCHCS." (internal citation omitted) (citing *Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009); *Gomes v. Mathis*, No. CV 17-7022, 2018 WL 2085237, at *3 (C.D. Cal. May 3, 2018))).

Plaintiff's remaining claims against both the CDCR and CCHCS fail for similar reasons.  As numerous other cases have concluded, California has not consented to suit in federal court under the Bane Act or California Government Code Sections 844.6 and 845.6

and, as a result, both the CDCR and CCHCS are immune from damages claims in federal court under these statutes pursuant to the Eleventh Amendment. *See, e.g.*, *Whiting v. Dep't of the Cal. Highway Patrol*, No. EDCV 18-2652-CAS (JEM), 2020 WL 5753231, at *13 (C.D. Cal. Sept. 1, 2020) ("California has not consented to be sued in federal court under the Bane Act." (citations omitted)); *M.B. III ex rel. Litem v. Cal. Dep't Corrs. & Rehab.*, No. 2:17-cv-2395 WBS DB, 2018 WL 5024093, at *1 (E.D. Cal. Oct. 16, 2018) (dismissing on Eleventh Amendment grounds claim against CDCR for failure to summon medical care pursuant to California Government Code Sections 844.6 and 845.6); *Allen v. Cal. Dep't of Corrs. & Rehab.*, No. 1:09-cv-00767-AWI-GSA, 2009 WL 4163510, at *3 (E.D. Cal. Nov. 23) (recommending dismissal of attempt "to pursue CDCR on a pendent state law claim under California Government Code section 845.6" as barred by Eleventh Amendment), *report & recommendation adopted* 2009 WL 5197855 (E.D. Cal. Dec. 23, 2009). For these reasons, the Court dismisses Plaintiff's claims against Defendants CDCR and CCHCS in their entirety for failure to state a claim and for seeking money damages against immune defendants. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

All that remain are Plaintiff's claims against Defendant Roberts for violations of the Eighth Amendment, Bane Act, and California Government Code Section 845.6. (*See* Compl. at 11.) The Court finds that Plaintiff's Eighth Amendment claim against Defendant Roberts is sufficient to surpass the "low threshold" set for *sua sponte* screening required by 28 U.S.C. Sections 1915(e)(2) and 1915A(b). *See Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1123; *see also Pogue v. Igbinosa*, No. 1:07CV-01577-GMS, 2012 WL 603230, at *9 (E.D. Cal. Feb. 23, 2012) ("The emerging consensus . . . is that a medically-trained official who reviews and denies an appeal is liable under the Eighth Amendment when a plaintiff can show that the official knew, at least in part, from reading the appeal that the plaintiff had a serious medical issue and nevertheless chose not to offer treatment.").

The remaining claims against Defendant Roberts must be dismissed, however, for failure to state a claim. Unlike Defendant Guldseth, Plaintiff has alleged only that Defendant Roberts failed to intervene in his treatment. Plaintiff cannot state a Bane Act

claim against Defendant Roberts for failure to intervene, at least in the absence of the "threats, intimidation, or coercion" by Roberts, which are not alleged in the Complaint. *See* Cal. Civ. Code § 52.1; *see also Marconi v. Officer One*, No. C 05-1978 CW, 2006 WL 2827862, at *9 (N.D. Cal. Oct. 3, 2006) ("Although there is authority establishing liability for an individual who fails to intervene under § 1983, there is no authority for imposing liability . . . under the Bane or Ralph Acts for failure to intervene."). And Plaintiff's claim under Section 845.6 must be dismissed for the same reason his similar claim against Defendant Guldseth was dismissed—medical malpractice alone does not violate Section 845.6, and the conduct Plaintiff currently alleges cannot be characterized as the kind of failure to summon medical care that would violate the statute. *See Castaneda*, 212 Cal. App. 4th at 1070; *Nelson*, 139 Cal. App. 3d at 81. Accordingly, Plaintiff's Bane Act and Section 845.6 claims against Defendant Roberts are dismissed *sua sponte* for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2); 1915A(b).

**IV. Leave to Amend**

Because the Court has determined that some of Plaintiff's claims survive the *sua sponte* screening process, the Court will give Plaintiff the opportunity either: (1) to notify the Court of his intent to proceed with his Eighth Amendment, Bane Act, and First Amendment claims against Defendant Guldseth and his Eighth Amendment claim against Defendant Roberts only; or (2) to file an amended pleading correcting the deficiencies in his initial Complaint identified in this Order, if he can. Plaintiff must choose one of these options within **forty-five (45) days** from the date this Order is filed. If Plaintiff choses to proceed only as to the claims against Defendants Guldseth and Roberts that survived screening, the Court will issue an Order directing the U.S. Marshal to effect service of Plaintiff's Complaint on Defendants Guldseth and Roberts at that time and dismiss the remaining claims and Defendants.

/ / /

/ / /

/ / /

**CONCLUSION**

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. Section 1915(a) (ECF No. 2);

2. **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2), with ALL PAYMENTS TO BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001;

4. **DISMISSES WITHOUT PREJUDICE** all claims against the CDCR and CCHCS for failure to state a claim and for seeking money damages against immune defendants pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b);

5. **DISMISSES WITHOUT PREJUDICE** Plaintiff's California Government Code Section 845.6 claims against Defendants Guldseth and Roberts and Plaintiff's Bane Act claim against Defendant Roberts for failure to state a claim pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b); and

6. **GRANTS** Plaintiff **<u>forty-five (45) days'</u>** leave from the date of this Order in which either to (1) notify the Court of his intention to proceed only with the claims that survived *sua sponte* screening; or (2) file an amended complaint that cures the deficiencies of pleading noted above. *Any amended complaint must be complete by itself without reference to his original pleading, and any Defendants not named and any claim not re-alleged in Plaintiff's amended complaint will be considered waived.* See S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th

Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived").

**IT IS SO ORDERED.**

Dated: October 30, 2020

_____
Honorable Todd W. Robinson
United States District Court